## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KEITH K. MUEGGENBORG,                    )
                                         )
                Plaintiff,               )
                                         )
v.                                       )          Case No. CIV-19-1008-SLP
                                         )
NORTEK AIR SOLUTIONS, LLC,               )
                                         )
                Defendant.               )

## O R D E R

Before the Court is Defendant's Motion for Summary Judgment and Brief in Support [Doc. No. 25].  Plaintiff has filed his Response [Doc. No. 30] and Defendant has filed its Reply [Doc. No. 33].[1]  Briefing is complete, and the matter is ready for determination.  For the reasons set forth below, Defendant's Motion is GRANTED.

## I.    Introduction

Plaintiff, Keith K. Mueggenborg (Plaintiff or Mueggenborg), brings this action alleging unlawful age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA) and the Oklahoma Anti-Discrimination Act, 25 Okla. Stat. § 1302 (OADA).  Defendant, Nortek Air Solutions, Inc. (Defendant or Nortek), moves for summary judgment and asserts that Plaintiff was terminated pursuant to a Reduction in Force (RIF) and based on legitimate, nondiscriminatory reasons.

---

[1] Citations to the parties' submissions reference the Court's ECF pagination.

## II.     Governing Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding whether summary judgment is proper, the court does not weigh the evidence and determine the truth of the matter asserted, but determines only whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).  An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998).  An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  *Id*.  In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. *Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

## III.    Undisputed Material Facts[2]

Nortek manufactures and sells custom HVAC units.  Prior to February 2019, Nortek manufactured its HVAC units at two separate plants, one located in Okarache, Oklahoma

---

[2] The following facts are either uncontroverted or viewed in the light most favorable to Plaintiff. The Court has not considered arguments of counsel included in response to the submission of facts or statements purporting to demonstrate a disputed issue of fact but unsupported by citation to any evidence of record.  *See* Fed. R. Civ. P. 56(c).

and one located in Oklahoma City, Oklahoma.  Nortek consolidated the plant operations in Oklahoma City in February 2019.

Plaintiff was employed by Nortek as a Senior Sales Application Engineer (SAE).  In that role, he sold the custom HVAC units to Nortek's customers.

In March 2019, Nortek implemented a RIF.  Nortek determined it needed to reduce the SAE role by two positions.  Nortek based this determination on a redundancy in the SAE function due to "[a]dvances in IT tools" which "allowed SAEs to perform more efficiently based on less waste and better tools."  Def.'s Mot. at 9, Statement of Undisputed Fact, ¶ 4.  Nortek identified the following criteria to govern its RIF decision: (1) job skills; (2) job performance; (3) job elimination and duplication; and (4) organizational needs.[3]

Nortek has four grades of SAEs with the lowest grade classified as SAE 1 and the highest grade classified as SAE 4:

> Each grade has its own defined sales goals for quoting, booking, and releasing.  The quoting goal is the dollar value of the quotes provided to potential customers, the booking goal is the dollar value of business actually booked to be produced, and the released goal is the dollar value of business ultimately sold to the customer.  *At the end of the year, the amount of business released is the most important number.*

Def.'s Mot. at 8, Statement of Undisputed Fact, ¶ 3 (emphasis added).

Nortek's quote, book and release performance numbers were as follows for each of the SAE grades:

---

[3] Plaintiff disputes that all RIF criteria were used to make the determination.  Plaintiff argues Nortek considered only job performance (i.e., sales history and performance reviews) to make the determination.

- SAE 1s - no specific sales goals for 2018 (but were expected to "demonstrate an ability to quote and book releasable sales and to work on building new sales")[4];

- SAE 2s – quote at least $12,000,000, book $4,000,000, release $4,000,000

- SAE 3s – quote at least $24,000,000, book $8,000,000, release $8,000,000

- SAE 4s – quote at least $30,000,000, book $10,000,000, release $10,000,000

See Brady Decl. [Doc. No. 25-1], ¶17.

At the time of the RIF, Nortek employed a total of 20 SAEs; there were four individuals classified as SAE 1, three individuals classified as SAE 2, nine individuals classified as SAE 3 and four individuals classified as SAE 4. Plaintiff was classified as SAE 3.

Mark Brady, Manager, Sales Application Engineers (Brady) and Pierre Ronkart, Vice President, Sales Application Engineers (Ronkart), made the RIF decisions. They evaluated every employee holding the position of SAE, regardless of grade, to determine which two positions would be eliminated. Brady and Ronkart reviewed sales data from 2017, 2018 and through March of 2019.[5] They then completed a form and provided 2017 and 2018 sales data and performance evaluation data to Lisa Smith, HR Manager (Smith). Smith reviewed age information "for potential legal risk and to ensure that the sales

---

[4] Nortek hired a total of 4 SAE 1s in 2018. In June 2018, Nortek hired Le, Moua and Dyson. In in August 2018, Nortek hired Simpson. It does not appear that Nortek employed any SAE 1s during 2017 as all SAE 1s addressed in the summary judgment record were hired in 2018.

[5] Plaintiff purports to dispute that 2019 sales data was included as part of the RIF criteria. Plaintiff does not dispute, however, that the 2019 sales data was reviewed as part of the RIF decision.

numbers and performance reviews supported the decision." Def.'s Mot. at 10, Statement of Undisputed Fact, ¶ 11.

Brady and Ronkart then selected Plaintiff and Michael Spaeth, another SAE 3 for the RIF. Plaintiff was 62 years old and had worked for Nortek (or its predecessor) for approximately 40 years. Spaeth was 78 years old. Spaeth was on a performance improvement plan (PIP) at the time of the RIF.[6]

Plaintiff's sales performance declined from 2017 to 2018, and from 2018 to 2019 compared to his peers as more fully detailed below. No SAES, other than Plaintiff, had any customer complaint from 2017 through 2019. Plaintiff's last performance review prior to the RIF resulted in an overall rating of "2." Only one retained employee, Greenway (SAE 2, age 59), had an equally low performance review rating of "2." Greenway was on a PIP during 2017 and 2018. He was removed from the PIP in December 2018 because had met or exceeded the objectives of the PIP.

### 2017 Sales Performance and Performance Review

In 2017, Plaintiff had the second lowest total booking and release numbers of all SAE 3s and the fourth lowest total booking and release numbers of all SAE 2s, SAE 3s and

---

[6] Nortek's performance reviews utilize a ranking scale of 1-4 with "1" being Unsatisfactory Performance and "4" being Performs Exceptionally. *See* Brady Decl., ¶ 14, n. 1. Spaeth had received a "2" on his 2017 performance review and a "1" on his 2018 performance review and, therefore, was subject to a PIP.

SAE 4s.[7]  Spaeth, the other employee selected for termination, had the lowest booking and release numbers.[8]

Plaintiff's performance review for 2017 resulted in an overall rating of "3."  The review states that Plaintiff needed to find a better method to track other jobs in which he was helping the SAE group.  *See* 2017 Performance Review [Doc. No. 25-6] at 4.

### 2018 Sales Performance and Performance Review

In 2018, Plaintiff had the second lowest total booking and release numbers of any SAEs 2s, 3s or 4s.  Spaeth had the lowest booking and release numbers of this group.

In 2018, a customer complained about Plaintiff's communications with him.  Nortek management had to intervene after Plaintiff upset the customer.  Plaintiff's performance review for 2018 resulted in an overall rating of "2."  The performance review included the following comments: (1) Plaintiff "need[ed] to focus on giving his reps better response time from price request to submittal packs"; (2) his booking and release goals (which fell short for 2018) needed improvement; and (3) "The biggest knock on Keith . . . is that [he is] difficult to work with and NOT OPEN-MINDED."  *See* 2018 Performance Review [Doc. No. 25-7] at 2- 4.

---

[7] Plaintiff admits the amount of business released is the most important number.

[8] As noted supra, it does not appear anyone was employed in 2017 as an SAE 1 and, accordingly, the record is void of any evidence regarding the sales performance of any SAE 1 during 2017.

**2019 (through March) Sales Performance**[9]

In 2019 (through March), Plaintiff had the second lowest total of quoted business of all SAEs, regardless of grade.  Spaeth had the lowest.  Plaintiff had the third lowest total of booked business of all SAEs.  Spaeth and an individual named Simpson (SAE 1) were lower than Plaintiff.  And, Plaintiff had the lowest total of released business of all SAEs.

Plaintiff was terminated from his employment on April 26, 2019.  Nortek included the RIF criteria in its OWBPA[10] disclosure to Plaintiff at the time of his termination.

## IV.   **Discussion**

### PLAINTIFF'S ADEA CLAIM

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  Thus, "[t]o establish a disparate-treatment claim under the plain language of the ADEA . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."  *Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 176 (2009).  A plaintiff need not, however, establish age was the "sole cause" of the adverse employment action. *Jones v. Okla. City Pub. Schs*., 617 F.3d 1274, 1278 (10th Cir. 2010).

---

[9] It appears from the record that Nortek conducts its performance reviews in January of the year following the year under review.  Thus, Plaintiff has no performance review for 2019.  The record does include Dyson's 2019 Performance Review (but no other employee's 2019 review is included).  Dyson was one of the SAE 1s hired in 2018.  He received a "3" on his 2019 Performance Review which also states that he was on target for a promotion to SAE 2.  *See* 2019 Performance Review [Doc. No. 30-9].  As Nortek notes, Dyson's 2019 Performance Review, completed in January 2020, has tangential relevance to Nortek's decision to keep Dyson in April 2019.  Even so, the review does not contradict Nortek's stated reasons for terminating Plaintiff.

[10] Older Workers Benefit Protection Act, 29 U.S.C. § 626()(1).

"A plaintiff can prove age . . . discrimination with direct or circumstantial evidence." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citation omitted). "Direct evidence demonstrates on its face that the employment termination was discriminatory." *Id*. (citation omitted). "Circumstantial evidence permits the fact finder to draw a reasonable inference from the facts indirectly related to discrimination that discrimination, in fact, has occurred." *Id*. (citation omitted).

In this case, no direct evidence of age discrimination exists. Accordingly, Plaintiff's case is governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020) (citing *Jones*, 617 F.3d at 1278); *see also DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 968 & n. 16 (10th Cir. 2017).

"Under *McDonnell Douglas*, the plaintiff first bears the burden of establishing a prima facie case of age discrimination. If the plaintiff carries this burden, the employer must then come forward with some legitimate, non-discriminatory reason for the adverse employment action. If the employer succeeds in this showing, the burden shifts back to the plaintiff to show that the employer's proffered justification is pretextual." *Hinds v. Sprint / United Mgmt. Co*., 523 F.3d 1187, 1195 (10th Cir. 2008) (citation omitted); *see also Frappied*, 966 F.3d at 1056.

## A.    Plaintiff's Prima Facie Case

To establish a prima facie case of discrimination in the context of a RIF, Plaintiff must show that: (1) he is at least 40 years old; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of his work; and (4) there is some evidence the

employer intended to discriminate against him in reaching its RIF decision.  *Deere v. XPO Logistics Freight, Inc.,* 798 F. App'x 278, 285 (10th Cir. 2020) (citing *Beaird v. Seagate Tech, Inc*., 145 F.3d 1159, 1165 (10th Cir. 1998)).  Plaintiff's burden is "not onerous," particularly because the burden is "one of production, not persuasion; it can involve no credibility assessment."  *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005); *see also Tabor v. Hilti, Inc*., 703 F.3d 1206, 1216 (10th Cir. 2013).

There is no dispute between the parties that Plaintiff satisfies the first element of a prima facie case.  Nortek points to the three remaining elements and argues that on the undisputed factual record, Plaintiff cannot establish any of those elements of his prima facie case.  The Court addresses each of the remaining elements in turn.

### Satisfactory Work

In support of the second element of Plaintiff's prima facie case, Plaintiff argues he only need establish that he was qualified for the job.  Nortek, conversely, points to Plaintiff's poor sales performance and performance reviews (in particular his 2018 evaluation rank of "2") and the customer complaint, to argue Plaintiff was not performing satisfactory work.

At the prima facie stage, a plaintiff need only show "his performance was of sufficient quality to merit continued employment" and that his job performance was "generally satisfactory."  *Denison v. Swaco Geolograph Co*., 941 F.2d 1416, 1421 (10th Cir. 1991) (citations omitted).  Here, the record shows that Plaintiff, who had been employed by Nortek for many years, had the objective qualifications necessary to perform the job and *generally* his performance reviews demonstrated his work was satisfactory.

There is no evidence that Nortek was considering terminating Plaintiff's employment prior to or independent of the RIF.  This is sufficient to establish a prima facie case.  *See, e.g., Ellison v. Sandia Nat'l Labs*, 60 F. App'x 203, 205 (10th Cir. 2003) (to establish a prima facie case, plaintiff may present evidence "that [he] continued to possess the objective qualifications [he] held when [he] was hired, or by [his] own testimony that [his] work was satisfactory, even when disputed by [his] employer, or by evidence that [he] held [his] position for a significant period of time" (citation omitted)); *Bolton v. Sprint/United Mgmt. Co.*, 220 F. App'x 761, 767 (10th Cir. 2007) (holding that a significant period of employment "alone is sufficient to establish the second element of the prima facie test").  Considering the evidence urged by Nortek at the prima facie stage improperly collapses the *McDonnell Douglas* framework.  *Denison*, 941 F.2d at 1421.  Nortek's arguments go to the weight of the evidence of satisfactory performance and not to Plaintiff's initial burden at the prima facie stage to produce such evidence.

### *Discharge*

Plaintiff also minimally establishes the third element of his prima facie case – i.e., that he was discharged despite the adequacy of his work.  For substantially the same reasons discussed with respect to the second element, Plaintiff has shown his work was adequate at the time of his discharge.

### *Intent to Discriminate*

The fourth element of Plaintiff's prima facie case, i.e., that Nortek intended to discriminate against Plaintiff in making its RIF decision, may be satisfied by "'[e]vidence that an employer fired qualified older employees but retained younger ones in similar

10

positions.'"  *Deere*, 798 F. App'x at 285 (quoting *Beaird*, 145 F.3d at 1165)); *see also*

*Frappied*, 966 F.3d at 1057 ("[P]laintiffs in reduction-in-force cases only need to show that

older employees were fired while younger ones in similar positions were retained."

(citation omitted)).   The record includes evidence that Nortek terminated Plaintiff but

retained younger employees, including younger SAE3s.[11]  This evidence is sufficient to

establish the fourth element.

> ## B.     Nortek's Burden to Articulate a Legitimate, Nondiscriminatory Reason for Termination

"If the plaintiff establishes a prima facie case, a rebuttable presumption arises that

the defendant unlawfully discriminated against the plaintiff."  *DePaula*, 859 F.3d at 970.

The burden then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason

for the adverse employment action suffered by the plaintiff."   *Id*.   This burden is

"'exceedingly light.'"  *Id*. (quoting *Williams v. FedEx Corp. Servs*., 849 F.3d 889, 899-900

(10th Cir. 2017)).

Nortek relies upon the RIF and argues, it is well-established that a RIF is a

legitimate, non-discriminatory reason for termination.  *See* Def.'s Mot. at 23 (citing cases);

*see also Beaird*, 145 F.3d at 1168 ("Seagate advances the RIF and its implementing criteria

---

[11] The retained employees in the overall SAE group ranged from ages 30 to 66.  Within the SAE 3s, the retained employees ages ranged from 34 to 59.  Nortek states that since the April 2019 RIF, no one has been hired to work as an SAE in Oklahoma.  Plaintiff purports to dispute this fact, attaching a document containing cursory information about two Nortek job postings.  *See* Pl.'s Resp., Ex. 14 [Doc. No. 30-14].  In Reply, Nortek states these job postings were for positions in Oregon.  *See* Def.'s Reply at 2-3, n. 2.  Notwithstanding Plaintiff's purported dispute (which appears unsupported), whether any additional SAEs were hired in Oklahoma is not material to the issues presented.

as a facially nondiscriminatory reason for its decision to lay off the plaintiffs. The company therefore has met its burden under the second prong of *McDonnell Douglas*." (citation omitted)). Nortek also relies upon Plaintiff's poor performance as measured by his performance reviews and lower sales numbers. *See id*. at 23-24. The Court finds Nortek has met its burden to show legitimate, non-discriminatory reasons for Plaintiff's termination.[12]

### C.   Plaintiff's Burden to Establish Pretext

At the pretext stage, a plaintiff must demonstrate that the employer's "proffered reason is factually false" or that "discrimination was a primary factor in the employer's decision." *DePaula*, 859 F.3d at 970. "A plaintiff can show pretext by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions such that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason." *Frappied*, 966 F.3d at 1059.

In RIF cases, a plaintiff can show pretext where: "(1) his own termination does not accord with the RIF criteria, (2) [the] RIF criteria were deliberately falsified or manipulated in order to terminate him, or (3) that the RIF generally was pretextual." *Pippin v. Burlington Res. Oil & Gas Co*., 440 F.3d 1186, 1193 (10th Cir. 2006). "When reviewing for pretext, [the court is] mindful [it] does not sit as a superpersonnel department that

---

[12] Plaintiff does not challenge any of the reasons articulated by Nortek as insufficient to satisfy its burden.

second-guesses the company's business decisions, with the benefit of twenty-twenty hindsight." *Frappied*, 966 F.3d at 1059 (citation omitted).

Here, Plaintiff primarily focuses on the alleged failure of Nortek to follow its RIF criteria (job skills, job performance, job elimination and duplication, and organizational needs) as the basis for pretext. Plaintiff argues Nortek's decision to terminate him was inconsistent with its goal of maintaining the most productive workforce. Plaintiff additionally argues Nortek otherwise failed to follow its own RIF criteria by failing to consider certain criteria and/or utilizing information not part of that criteria. Plaintiff further focuses on Nortek's alleged "shifting explanation" for its decision. Plaintiff contends that Nortek justified its decision to terminate him by adding new reasons to support that decision at the summary judgment stage of litigation. Specifically, Plaintiff points to what he characterizes as a new RIF criterion – the need for a balanced workforce – that was not included as part of the original RIF criteria. And, Plaintiff further argues Nortek newly cites a customer complaint against Plaintiff as further justification for the RIF decision.

### 1. Nortek's RIF Goal – To Eliminate the Lowest Performers

Plaintiff states: "[t]he claimed intention of the RIF was to eliminate the "lowest performers" and "to retain the best performing group of employees." Pl.'s Resp. at 13, ¶ 8. Nortek does not dispute this statement. Def.'s Reply at 3, n. 3.

Plaintiff argues this "claimed intention" of the RIF is pretext and points to the fact that Nortek terminated its two oldest employees, Plaintiff and Mr. Spaeth, instead of eliminating "two of the very young and newly hired SAE1s[.]" Pl.'s Resp. at 29. Plaintiff

argues "[k]eeping much younger persons still in training and with limited *skills* is facially inconsistent with the goal of keeping the best group of *performers*[.]"   *Id.* (emphasis added).[13]   According to Plaintiff, the fact that he was more skilled than lower level SAEs shows the RIF decision was pretextual because a failure to consider skill unduly disadvantaged him.[14]

### a.    Job Skills

The factual record establishes the SAE 1s did not have the same level of experience or skill as SAE 3s.  The factual record also establishes each grade of SAE was subject to its own performance standards. "Each grade ha[d] its own defined sales goals for quoting, booking and releasing."  Def.'s Mot. at 8, Statement of Undisputed Fact, ¶ 3.

Plaintiff argues job skills were never considered.  Plaintiff cites testimony of Smith that job skills were part of job performance and she *assumed* consideration of job skills was part of the performance review, *but she did not know*.  Smith Dep. [Doc. No. 30-3] at 20:1- 21:17.  Smith's inconclusive testimony is insufficient to satisfy Plaintiff's burden of proof.

---

[13] Plaintiff's argument subsumes performance into skill – the exact inverse of what he criticizes Nortek for purportedly doing, i.e., subsuming skill into performance.

[14] Without addressing sales performance, Plaintiff argues that Nortek's RIF decision is discriminatory because Nortek should have fired its newest hires, the least experienced SAE 1s. *See, e.g.*, Pl.'s Resp. at 6 ("This group of new hires were clearly **not** the best performers under any standard.").  In making this argument, Plaintiff impermissibly substitutes his judgment for Nortek's.  *See Frappied*, supra, 966 F.3d at 1059; *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007) (court's role is to prevent intentional discriminatory practices, not to act as a "super personnel department" and "second guess[] employers' honestly held (even if erroneous) business judgments" (internal quotation marks and citation omitted)).

Plaintiff also cites Brady's testimony.  Brady testified that Plaintiff's SAE 3 skills included energy recovery systems work and that SAE 1s would not be able to perform that work.  Brady Dep. [Doc. No. 30-7] at 51:7-53:18.  Nortek does not dispute that as a grade SAE 3, Plaintiff had more experience and skill than any grade SAE 1.

In response, Nortek argues skill level was factored into performance.  Nortek points to Smith's additional testimony that the RIF decision was based on "how [employees] performed *at the level to which they were required to perform*" and that Nortek retained "the best employees according to how they perform in the job that they're in."  Smith Dep. [Doc. No. 33-1] at 40:6-25 (emphasis added).[15]    Nortek also points to Mr. Brady's testimony that the SAE 1s "were performing better than [Plaintiff] as overall performance in their job duties.  [Plaintiff] was not."  Brady Dep. [Doc. No. 33-2] at 80:18-81:1.  In this regard, the Court notes that "[i]t is the manager's perception of the employee's performance that is relevant, not the plaintiff's subjective evaluation of his own relative performance."  *Jones v. Denver Post Corp.*, 203 F.3d 748, 754 (10th Cir. 2000) (citation omitted).

Considering the additional testimony, Plaintiff fails to create a reasonable inference that *no* consideration was given to job skills.  To the contrary, job skills were considered in conjunction with job performance and weighted accordingly. *Cf. Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 745 (10th Cir. 1991) (finding the plaintiff presented no evidence to

---

[15] In response to an inquiry by Plaintiff's counsel as to why SAE 1s were retained "if the goal [were] to maintain the highest performing group of people," Smith further testified: "It was really how they performed against their targets and Grade 1 employees are earlier in their career, I don't believe they have targets."  Smith Dep. [Doc. No. 30-3] at 25:12-18.

indicate his employer "could not justifiably evaluate him under standards higher than those applied to lower-level, younger employees"). The fact that job skills were considered in a manner different than Plaintiff contends they should have been considered speaks to the methodology by which Nortek implemented the RIF criteria. *Cf. Beaird*, 145 F.3d at 1169 ("[An employer] may choose to conduct its RIF according to its preferred criteria of performance . . . and [the court] will not disturb that exercise of defendant's business judgment."). Thus, the Court finds Plaintiff's argument that Nortek did not consider skill is unsupported and he fails to show pretext on this basis.

### b.    Job Performance

With respect to job performance, Plaintiff claims only 2017 and 2018 sales numbers were part of the RIF criteria. Plaintiff argues Nortek impermissibly relies on 2019 sales numbers to support its termination decision. The record belies this argument. It is clear that Brady and Ronkart considered the 2019 sales numbers in making the RIF decision.[16]

Plaintiff also argues he had a successful sales rating in 2017. In support, Plaintiff relies on his 2017 Performance Review [Doc. No. 25-6], which shows that he achieved

---

[16] Plaintiff does not dispute the accuracy of the sales numbers for 2017, 2018 and 2019. *Cf. Jaramillo v. Colo. Judicial Dept.*, 427 F.3d 1303, 1310 (10th Cir. 2005) ("As a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual." (citation omitted)). Instead, he argues, with respect to 2018, that he "hand[ed] work off to other SAEs for booking and releases." *See* Pl.'s Resp. at 11, RDF24. Plaintiff's argument is not supported by the factual record. Plaintiff's 2017 Performance Review notes that Plaintiff needed a better method to "track all the other jobs in which he is helping the SAE group" and that Plaintiff had "quot[ed] numerous job[s] for the SAE team." *See* Performance Review [Doc. No. 25-6] at 4. Plaintiff conclusorily argues this problem was "still present in 2018." Pl.'s Resp. at 7-8, RDF9. Moreover, Plaintiff's 2018 Performance Review expressly states that his "bookings and release goals fell short this year." *See* 2018 Performance Review [Doc. No. 25-7], at 3. In any event, Plaintiff's speculation that his sales would have been greater but for "tracking" issues is insufficient to demonstrate pretext.

"100% total Productivity." *Id*. at 3, 6.  But as Nortek points out, this argument fails to acknowledge that Plaintiff did not meet the monetary goals for an SAE 3.  More importantly, it does not account for how his sales performance ranked in comparison to the other SAEs, as discussed supra.  Thus, Plaintiff's reliance upon his 2017 sales rating of "3" fails to demonstrate pretext.

Additionally, Plaintiff argues a customer complaint made against him and relied upon by Nortek as part of the RIF decision is duplicative of his performance review and, therefore, pretextual.  Plaintiff cites selective, favorable portions of his 2017 and 2018 Performance Reviews.  According to Plaintiff, by considering the customer complaint, Nortek, essentially created a new RIF criterion or "double counted" the complaint.  Plaintiff's argument on this point is unsupported.  Although the customer complaint at issue is not expressly mentioned in any performance review, the record establishes it was considered as part of Nortek's performance review of Plaintiff.  *See, e.g.,* Brady Dep. [Doc. No. 33-2] at 64:19-24; 65:15-21; *see also* Ronkart Dep. [Doc. No. 33-3] at 47:4-12.  And Plaintiff's customer relations was an issue addressed in his 2018 Performance Review.  *See* discussion, supra.

### c.    Job Elimination and Duplication

Plaintiff again relies upon the testimony of Smith to show Nortek did not follow the RIF criteria of job elimination and duplication.  Smith testified that she did not know whether these criteria were used in the selection process.  Smith Dep. [Doc. No. 30-3] at 20:7-12.  She further testified that she was never told there was a duplication, but she was told there was a need to reduce the number of SAEs.  *Id*. at 22: 10-17.

17

With respect to job elimination, the undisputed record shows Nortek determined a need existed to reduce the SAEs by two.  Thus, Plaintiff fails to establish the job elimination criterion was not followed.[17]  The Court, however agrees with Plaintiff that the undisputed factual record does not show "duplication" was a RIF criterion that formed the basis of Nortek's decision to eliminate Plaintiff's job.

### d.     Organizational Needs

Plaintiff's only argument with respect to organizational needs is that "the Level 1 SAEs were not capable of filling the needs that Mr. Mueggenborg filled."  But Plaintiff's argument is duplicative of his argument regarding skill level and ignores the undisputed factual record that "[a]dvances in IT tools allowed SAEs to perform more efficiently based on less waste and better tools."  Def.'s Mot., Statement of Undisputed Fact, ¶ 4 (citing Brady Decl, ¶¶ 7-8).[18]

In sum, the Court finds Plaintiff's arguments regarding Nortek's failure to follow its RIF criteria are insufficient to support a finding of pretext. The record shows Nortek applied all but one criteria – job duplication.  With respect to job duplication, there is no evidence sufficient to show a failure to consider this criteria is probative of pretext such as

---

[17] Nortek states that there was a redundancy in the SAE function and a business need to reduce the SAE role by two positions.  *See* Def.'s Mot. at 9, Statement of Undisputed Fact, ¶ 4 (citing Brady Decl, ¶¶ 7-8)).  Plaintiff does not dispute these facts but instead purports to dispute only the additional fact that Brady was instructed to eliminate the "two lowest performing employees' positions."  *Id*.; *see also* Def.'s Resp. at 6, RDF 4.

[18] Again, Plaintiff does not dispute this portion of Nortek's Statement of Undisputed Fact, ¶ 4.  *See* Pl.'s Resp. at 6, RDF 4.

to create a reasonable inference that Nortek did not act for the asserted non-discriminatory reasons.

### 2. Shifting Explanations

Plaintiff further argues Nortek relied upon "shifting explanations" or post-hoc justifications for his termination as evidence of pretext. A post-hoc justification is one that is inconsistent with a reason offered at the time of termination. But where an employer merely elaborates on the initial justification for termination, there is no support for a finding of pretext. *Matthews v. Euronet Worldwide, Inc.*, 271 F. App'x 770, 774 (10th Cir. 2008).

Plaintiff argues Nortek offered a new explanation regarding consideration of skill level at the summary judgment stage of proceedings. Plaintiff points to the Declaration of Mark Brady where he states:

> In considering job skills and job performance, Nortek considered the various types of work performed by SAEs at different levels. Nortek considered the need for entry level SAEs to perform entry level work and the need for senior SAEs to perform more complex work, *and was mindful of having an appropriately balanced workforce of SAEs with varying degrees of experience suitable to the work that would need to be done.*

Brady Decl., ¶ 10 (emphasis added). Plaintiff argues the need for a "balanced workforce of SAEs" is not included anywhere in the RIF documents, the EEOC position statement or Nortek's answers to interrogatories. Pl.'s Resp. at 31. According to Plaintiff "[t]his is not a change in details, but in substance." *Id.*

The Court disagrees. As set forth, Nortek considered job skills and job performance. Brady's "balanced workforce" statement is not inconsistent with Nortek's consideration of these RIF criteria, but rather, an elaboration on these criteria. Moreover, even if this

statement could be construed as inconsistent, it would constitute, at best a minor inconsistency." And such minor inconsistencies do not constitute evidence of pretext. *Hysten v. Burlington N. Santa Fe Ry. Co.*, 415 F. App'x 897, 908 (10th Cir. 2011).

"A plaintiff demonstrates pretext by showing that the employer's proffered explanation is unworthy of credence." *Jaramillo*, 427 F.3d at 1309 (internal quotation marks and citation omitted). Plaintiff's own perceptions about performance, his dispute with the criteria relied upon and how they were applied and his attempts to manufacture discriminatory motive are insufficient to show pretext.[19] These arguments, on the record presented, align with impermissible second-guessing of Nortek's honestly-held business judgments not with inferences of a weak, implausible, inconsistent or incoherent explanation that demonstrates subterfuge for discrimination.

## PLAINTIFF'S OADA CLAIM

Claims under the OADA are evaluated using the same standards as claims under the OADA. *See Wood v. Midwest Performance Pack, Inc.*, No. CIV-16-785-D, 2018 WL 1440980 at *3 (W.D. Okla. Mar. 22, 2018) (unpublished op.) ("The legal analysis applicable to Plaintiff's claim under the OADA is the same as that for an ADEA claim" (citing *LeFlore v. Flint Indus., Inc.*, No. 98-5024, 1999 WL 89281 at *3 n. 4 (10th Cir. Feb.

---

[19] Plaintiff argues Smith's engagement and review of the RIF decision shows that Nortek recognized an age issue in the selections of Plaintiff and Mr. Spaeth and supports a finding of pretext. *See, e.g.*, Pl.'s Resp. at 8, RDF 11; *see also id.* at 35. To the contrary, "inferring discriminatory animus" where an employer uses a tool, such as a spreadsheet "to scrutinize hiring and firing decisions . . . for signs of . . . discrimination . . . would, if anything, risk undermining, rather than furthering, the ADEA's purposes." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1199 (10th Cir. 2008).

23, 1999)).  Consistent with the ruling on Plaintiff's ADEA claim, the Court finds Plaintiff's OADA claim fails as a matter of law.

## V.  Conclusion

The undisputed factual record supports Nortek's genuine belief that Plaintiff was one of the lowest performing employees in the SAE group and that Nortek acted in good faith upon that belief when including Plaintiff in the RIF.  Plaintiff has failed to demonstrate any reasonable inferences showing Nortek's legitimate, non-discriminatory reasons are pretextual.  The Court, therefore, finds Nortek is entitled to summary judgment as to Plaintiff's age discrimination  and OADA claims.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment and Brief in Support [Doc. No. 25] is GRANTED.[20]

A separate judgment will be entered contemporaneously with this Order.

IT IS SO ORDERED this 22nd day of September, 2020.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[20] The summary judgment disposition renders moot the following pending motions: (1) Plaintiff's Daubert Motion to Exclude Defendant's Expert [Doc. No. 24]; (2) Plaintiff's Motion in Limine [Doc. No. 40]; and (3) Defendant's Omnibus Motion in Limine [Doc. No. 44].